On behalf of Mr. Naranjo, Petitioner and Appellant, on the issue of whether there is, here I'm arguing on the issue, in my opening brief, Phillip Bronson for the Appellant, on the opening brief addressed the, attempted to address the issue of whether there was equitable estoppel in the case of retained counsel. What is the conduct that's alleged to have taken place here by the Petitioner? By the retained counsel? No, well, by the counsel who had the files, yes. Well, he was paid at least $4,500. Okay, what happened about the files? And the files were turned over to the retained attorney, Mr. Perez. So what do you say is the basis for equitable estoppel in this case? The fact that he was paid to file a petition for habeas corpus, which he never did, and retained the files during that time. That's a case of lawyer's negligence, right? No, I don't believe so. I believe it goes way beyond lawyer's negligence. That's what I'm trying to find out here. Was there more than lawyer's negligence? Yes. What was it? It was misconduct. What was the misconduct? The misconduct was the failure to not, number one, the misconduct was taking the money and not preparing and filing the petition for habeas corpus within the requisite period. There's some suggestion, I think, in the petition, that the Petitioner asked for the files back and the lawyer refused to return them. Am I right about that? Well, there's an implication. In the habeas corpus petition, that's not clear. In the petition that's filed with the district court, that's not clear. No, it's not clear. I don't want to find out whether you're standing on that allegation or an allegation like that or merely lawyer's negligence. No, I'm standing on misconduct on the basis of his statements that he made in his traverse. Which is? Which was that retained counsel, Mr. Perez, was paid $4,500 to file a petition for habeas corpus within a year. That he promised to do this. And he alleges in the traverse that the petition, he didn't comply with the petition, with the promise the petition was never filed. That the records were not returned until April 4th. This is on page, on the excerpt of record, page 65. And it's the first page. Well, that, doesn't that say that Perez did not want to return the records to the petitioner? On page 65. Yes, and he did, and that he did not file the, he didn't file. But it's a very different case if the allegations are that the prisoner requested the records back and the lawyer didn't return them upon request. That's one kind of a case. It's very different from a case in which a lawyer was paid and simply failed to file in time. You follow me? I'm following you. The declarations attached to his, the request for the certificate of appealability at page 95 of the excerpt in which counsel for respondent says the court cannot take judicial notice because this particular, this particular document was not before the this argument. I would like to point out that within a few months after, I'm reading from page 95 of the excerpt, page 95 of Petitioner's excerpt. It's a big page. Paragraph 5. It says when we saw that Mr. Perez was in action for about three months after we retained him, we requested the records and files, but Mr. Perez refused to send them to us. So this is three months after he was retained, which is where vis-a-vis the F.A. filing period. How many months into the one year? It would have been, it would have been, it would have been, it would have been, it would have been, it would have been three months into the one year, but he's nine months left. Approximately nine months left. And what does he do? He does nothing. He does not return the records and files. He does not seek to be relieved. What does Petitioner do? What should he be done? What did he do? What did he do? Did Perez do or did the client do? What did the Petitioner do after the refusal to get the files back? Well, he evidently was acting, I mean, after this three month period, then the family requests that they return the files. Right. And then nothing else happened. The Petitioner didn't do anything. There was nothing else that he could do. There was no second request. There was no second request that I can see from this record. No third request. No. There's no effort to go to the Bar Association. None of the things that turned out to be pivotal in Spitzin. Two of the things that are pivotal in Spitzin are here. One was that he was paid, both attorneys were paid. And both attorneys, there were three things. But Attorney Miranda was paid too. Yeah, but that was just misadvice. The fact that he was paid is a fact that cut both for you and against you. No, but that's just one of the elements. Spitzer was paid. Miranda was paid, but he gave misadvice. I don't think you're listening to me. Citing facts that are present in cases that go against you as well as for you doesn't help you any. What you have to do is find the facts in Spitzin that distinguish it from Miranda. And see how many facts you have in common with Spitzin that you don't have in common with Miranda. Citing a bunch of facts that are common to both doesn't get you anywhere. So he had one request. That makes it different from Miranda. And sort of a little closer to Spitzin, but Spitzin made a big point of the fact that there were repeated persistent requests by both the petitioner and his mother. They went to the Bar Association. They showed their persistence and desperation for a long time and nothing happened. Well, the client also here went to the Bar Association on November 17th. Well, that's what I asked you. I asked you the question. You go to the Bar Association. Yes. He went to the Bar Association. Was this going to be the filing period? I believe it would have been a few months after the expired expired. Let's focus the time being on the period of the while he still could have done something. Did he do anything other than one request? The council do anything or the client could not do anything. He didn't have the records. He couldn't file a habeas petition without his records and files. No. No, he didn't do anything else during the period. Other than rely on. You say he didn't do anything other than he did something. Did he do something or did he not do something? No, there's only that one request to get back. Did he do anything else other than a request? During the complaint. Is there some other fact that that happened within that filing period within the statute of limitations? Any other facts you want to pay attention? From what I can read from making other declarations, the only specific firm thing is that they requested the files back on about three months after council was retained because he was doing nothing, which I think brings him close to the Smithson case rather than Miranda. If the case were remanded for an evidentiary hearing, what evidence do you think you could develop to show the prejudice suffered by the petitioner as a result of a lawyer's conduct, other than the failure to file? Is there anything else or have you investigated the circumstances of the failure to proceed after the refusal of the files? Well, there would have to be testimony taken by the. I understand there would be testimony, but what would it show? What would you expect to show if there were an evidentiary hearing in support of the equitable? Well, it would at least show that the client, the family of the client tried to get back the records. I would attempt to show that there were further communications between the sister and the wife and Mr. Perez, the attorney. I think further facts might be able to be developed on remand to show. I don't know if this is true or not, but there may be further facts to show to bring this more light with Spitzen to show that there were more than one attempt to get back that file. And in these circumstances where we have at least this one clear request as shown by the declarations of the sister and the wife, remand should be made to the district court to see if there's anything further here rather than just let this thing lapse because the record is not that clear without a hearing. And I would submit that at the very least, remand should be made for an evidentiary hearing to see what further facts can be developed by the attorney representing in the district court to see what Why wouldn't these facts? Why wouldn't these facts develop the last time? I mean, so saying here I'm on appeals and those back and give it let us have another try is not the way things are usually done. Usually you develop whatever facts you're going to develop while you're in the district court and you come on appeal. Well, I think the facts had to be developed in the district court and not in the court of appeal. The facts had to be developed. So therefore, a hearing should have been granted by the by the magistrate to see what other facts were involved here. Mr. Russell, I know your time has expired, but there is the troubling jurisdictional fact that your appeal is so late. And you offer an explanation that you went to the wrong prison. The notice of the judgment went to the wrong prison. That's your explanation why the appeal is so late. Why? Why the petition on this appeal is the you missed the jurisdictional time in which to file the appeal. Well, I thought the basis of that was he didn't receive the records back until we know that. Well, that's in that's in his his in a sense in his proffer in his traverse where he says the records will return to petitioner on April 4th. And it says that. But how do we know it is a fact? Well, it's not made under a declaration of perjury, though I think the court has discretion to accept his proffer for purposes of this hearing. Well, he I understand there's a photocopied envelope that's received by the U.S. District Court dated August 2nd. But that envelope's not in the clerk's file on the district court. How did you get the copy of the file of the envelope? It came from the district. Everything I had that I put in the excerpt was taken from the. And how did you get it? I it must have been attached to one of the papers that were in the district court's files. But it's no longer there. But did you actually have a photocopy? I had these for these papers photocopied. Well, I had the district court photocopy the records and they were given to me. So they must have lost it or something. Well, it's just I mean, that's your first hurdle is to get over the lateness of the appeal. Well, our argument is that it's equitably told because the attorney didn't do anything. No, it's the appeal from this judgment, the appeal from the magistrate's judgment. It's filed far too late unless there's some explanation for it. Well, anyway, that's the problem. Okay, we'll hear from opposing counsel. Deputy Attorney General Michael Keller, on behalf of the warden. May it please the court. To obtain equitable tolling, Petitioner must show extraordinary circumstances beyond his control made it impossible to file his federal petition on time. This court considers only the record that was before the district court at the time the entry of judgment was filed. In this case, the district court entered judgment on May 17th of 2002. That's excerpts of Record 77. Now, according to Petitioner today, there was one clear request for files made about three months. And as support, he's citing two declarations that were contained in pages 95 of the excerpt's record. Those are taken from the notice of appeal that was filed in the request for a certificate of appealability. That was filed on October 11th of 2002. These declarations that were drafted, not only were they not a part of the district court record, the declarations hadn't even been drafted at the time that judgment was entered in this case. So essentially, his equitable tolling argument is based on these documents that were contained in the notice of appeal. But he's made no effort to persuade this court that the documents are properly considered by this court here today. How did the district court come to dismiss it? You filed a motion of summary judgment? Pardon me? How did the district court come to dismiss the case? The district court? Yes. Yes. That's correct, Your Honor. You filed a motion of summary judgment. Oh, no, not a motion for summary judgment. I'm sorry. No, a motion to dismiss on timeliness grounds. Was the Petitioner. A motion to dismiss. And is that the kind of thing that could be opposed by presenting factual evidence? It was in the form of, in this case, the way that the magistrate wanted it was in the form of an answer with a traverse. And so the traverse came in. So he could have put in factual matters even though it was a motion to dismiss. Correct, Your Honor. Was he represented by a counsel? No, pro se, yeah. Are you admitting his explanation of why he is so late in appealing the magistrate's judgment? No, Your Honor. Would you say something? I mean, jurisdictional, we don't have jurisdiction. Is that your position? That would be ours, yes, Your Honor. You didn't argue that in the brief. My understanding was that the Ninth Circuit had already granted him the leave to file it and that the issue had already been resolved. So essentially what we're left with in determining whether the district court properly found that the petition was not timely filed is the allegations that were contained in the traverse. And the traverse is only a few pages long. And essentially when you look at it, which is found in excerpts of records 65 and 66, it really just contains a few simple allegations without any evidentiary support. It says that on January 27th of 98, the family hired an attorney to file a petition. There's no mention as to whether it's a state or a federal petition. I'm sorry. I'm looking at 65. Where are you from? I'm sorry. Yeah. On January 27th of 98, attorney Albert Perez received $4,500. Right. And in the paragraph above that it said he was hired to do a petition. It doesn't say whether it's a state petition or a federal petition. He contains an allegation that the attorney failed to file that petition. And then he has an allegation that the attorney gave the files to the petitioner's family on April 4th, 2001. But there's no mention that he made any requests for the files. He won, let alone the multiple requests that were in Spitzen. There's no allegation of anything like that in this case. So as this traverse failed to allege any extraordinary circumstances, the district court properly found that the petitioner wasn't entitled to equitable tolling. And this case is definitely distinguishable from the Spitzen case. The Spitzen just reaffirmed that ordinary attorney negligence doesn't justify equitable tolling. It's only where it's sufficiently egregious and where the petitioner has exercised reasonable diligence. In Spitzen you had a situation where – It is significant that you asked for the papers back and the lawyer didn't send them. That would at least explain as to why he didn't have this in his traverse. Well, Your Honor, he did – I mean, we do have a sworn statement from his sister and mother, is it, saying that they asked for the papers back. I'm sorry, the three months into the period they asked for the lawyer to return the papers, he never did. I would point out, Your Honor, that the date of the declaration, which appears to be August of 2002, is pre-Spitzen. So it wasn't Spitzen that jogged this. In other words, they understood that that might get them somewhere. The unfortunate thing is that they didn't make this allegation in the district court, and that's why it can't be considered by this court now. It wouldn't be fair to the district court to consider allegations that – Is being fair to the district court our job? I thought it was being fair to litigants. Yes. Judges have to rely on their Article III status for support. That's correct, Your Honor. But what I'm saying is that when you have a district court judgment that you're reviewing, you consider the record that was before the district court. You don't create additional facts and – Well, yes, except, you know, you've got a guy who's in prison, who hasn't got a lawyer, and somebody's looked at these things more charitably under those circumstances. And then he's got some breaking authority that happens after he's in district court, and he seems to have some facts that would attack the authority. So it's just a little troubling. I mean, this is the whole thing. I mean, if you wanted to look at cases like Miranda, what happened in Miranda is that the lawyer miscalculated the deadline. We said, well, the lawyer, you know, you hired the lawyer, the lawyer's negligent. That's too bad. You're not entitled to competent counsel and habeas, and that's the end of the matter. But I am wondering whether not doing anything at all goes beyond negligence. I mean, it's one thing for a lawyer to sit there and do what lawyers do and muff it. You know, he forgets to calculate a deadline or doesn't look up a case or whatever. At least he's doing lawyers' work. He does it badly. He's negligent. But when the lawyer takes the money and then goes off to Vegas and gambles it away, or whatever he does with the money, and never cracks a book and never looks at the papers, I am wondering whether that really is negligence at all, and whether that is not such dereliction of duty that we can't really say it's negligence. It's not practice of law at all. It is being an imposter. And isn't that the operative distinction between Spitson and Miranda? I would submit it's not, Your Honor. I would submit from Spitson that it wasn't merely the fact that the attorney missed a deadline, but that it was these repeated requests for the files that was important in that case. I realize that Spitson says that. But I am not entirely sure where if you take Miranda seriously, I mean if you take it literally, not seriously, obviously you take it seriously, but if you take it literally to say attorney negligence is not enough, then what difference does it make whether the guy is asking for his files back? If the lawyer is being negligent, he's being negligent. What does the conduct of the client have to do with whether the lawyer is being negligent? Isn't a fair way to read Spitson to say, look, it's one thing when you've got a lawyer who's trying to be a lawyer and doing a bad job of it. That's too bad, you hired the wrong lawyer. But we've got a lawyer who's abandoned his post and it's like nobody's there. Then that's a different animal. And if we read Spitson that way, then it seems to me he's alleged enough in the district court, even on the limited record that he made there. And why isn't that the correct reading of Spitson? Well, I think the way I read it is that if you have the mere failure to file would be negligent, but if he requests the files and you say I'm not returning them to you and you ignore those repeated requests, now you're being obstructed. I'm sorry. Now he's actively. I'm sorry. I didn't. Did the lawyer say, no, I'm not giving them back to you? Well, I think that when you have these repeated requests without getting the files returned to you, I think at some point the court is now evaluating this attorney as this isn't a case where. I know, but you can't add facts to cases just because, you know. There was nothing the lawyer said back, no, I'm going to keep the files. Right. All we have is non-response from the lawyer. It could be non-response because he's busy. It could be non-response out of spite. It could be non-response because he's taking a long vacation. That's correct, Your Honor, but it's not. It could be non-response because he moved and left no forwarding address. Right? So we don't really know anything about the lawyer from the repeated requests. We don't even know if he got the repeated requests. But we do know that they were made, whereas in this case we don't even know that there was. And Spitzman was very clear that that is an important set of facts. But I'm not sure I understand why it's an important set of facts once you accept the teaching of Miranda, which says negligence is not enough, because if negligence is not enough, a lawyer who doesn't return files is negligent too. Isn't a better way to distinguish Miranda and Spitzman a more principled way to say, look, Miranda the lawyer was trying to be a lawyer. He did a bad job of it. He miscalculated. But he was a poor lawyer, but he was a lawyer, whereas the guy in Spitzman was just a mailbox. It may also be, Your Honor, that it goes towards the petitioners showing that he was doing everything possible, that he was acting reasonably diligent. And where does that go to? Well, because it requires both the, you know, to obtain equitable tolling must show extraordinary circumstances beyond his control made it impossible. And Spitzman talks about, in fact, in his remand, it says the question would be whether Spitzman exercised reasonable diligence in ultimately filing. So in this case, there weren't repeated requests. Where is the diligence shown by petitioner? He doesn't on, let's see, in excerpts record 93 and 96, he says he could have filed the federal petition on time if he had the copy of the petition for review. But petitioner fails to explain why he didn't seek a copy from the court system, from the attorney general's office, from his attorney on direct appeal, all kinds of things like that, that he didn't allege in the district court. And I would also point out that when he has stated that his family retained Albert Perez to file either the state or the federal petition, but he's attached as in his excerpts of record exhibit D, which is excerpts record 98. It appears to say that he appears to be a copy of the agreement between petitioner's wife and the attorney. And it says that he's only being retained to investigate filing and that he was that not that he's being retained. If that's if that's indeed a copy of the agreement, which it appears to be, it appears that he was hired just simply to investigate the possibility of new evidence, but not that he was being retained to specifically file a federal petition. OK, thank you. Thank you. Well, you're actually into the negative time. I'll give you 30 seconds. If you say something interesting in 30 seconds, maybe I'll let you go on. In that case, he says, I only retained to investigate the written nothing else until further forty five hundred dollars. If you accept the declarations of this, we're talking about this is the ninety eight. And if you accept the declarations of the wife that he was paid nine thousand, he actually did receive the additional forty five hundred to go on with the case. OK. And just one thing. The court does have discretion to consider these declarations of the of the wife, even though they weren't part of the district court record. OK. There's authority to that thing. OK. Just argue. We'll stand submitted. You know, there was a case. It turns out there is a case on the calendar that was submitted in the briefs. Vali and this is Ashcroft. I missed it when looking at the cameras in that case. Also the submitted. So what makes your argument in the computer task group versus.
judges: Kozinski, Noonan, Schwarzer